IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT GARY MOORE *
Plaintiff,
v. * CIVIL ACTION NO. JKB-17-1025

OFFICER MCHOGOFF *
OFFICER ANDERSON
OFFICER MILLER *
OFFICER DICE
Defendants. *
*****

**MEMORANDUM**

Pending before the court is a motion to dismiss or, in the alternative, motion for summary judgment filed by defendant Anderson[1] (ECF No. 19) and Robert Gary Moore's opposition. ECF No. 21. Upon review of the pleadings, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendant's dispositive motion IS GRANTED.

## I. Complaint Allegations

On April 13, 2017, the court received for filing the above-captioned 42 U.S.C. § 1983 verified complaint filed by Robert Gary Moore, a prisoner housed at the North Branch Correctional Institution ("NBCI"). Moore seeks compensatory damages and the firing of four NBCI officers. He complains that from July 26, 2016, to August 21, 2016 (26 days), he was held

[1] The NBCI Litigation Coordinator accepted service on behalf of Correctional Officer Anderson, but refused to accept service on defendant Correctional Officers McHogoff and Dice, indicating that she was unable to identify those officers as there were no persons found by those last names. ECF No. 5-1. In addition she noted that she could not accept service on behalf of defendant Correctional Officer Miller because there were currently two officers identified as Correctional Officer Miller and both officers had the initial "S" for their first name. *Id*. In response, Moore claimed that Correctional Officer McHogoff did in fact work at NBCI. He additionally contended that the Litigation Coordinator is lying as he has witnessed Correctional Officers Dice and Miller work on his tier. ECF No. 8.

in segregation without his legal or writing materials, which rendered it impossible for him to work on his Baltimore City Circuit Court post-conviction petition or to contact his family and friends. ECF No. 1. Moore claims that his due process and access-to-courts rights were violated. *Id*.

In a supplemental complaint, Moore states that he asked to be placed in a single cell on segregation due to gang violence. He complains that the request was denied and he was placed in a holding cell "with no further incident." He alleges there was no physical altercation and thus no rational basis for denying him his property under the Equal Protection Clause, as other segregation inmates were allowed the same property. ECF No. 10.

**II. Dispositive Response**

Anderson states that on July 26, 2016, Moore received a rule infraction for refusing to return to his cell. ECF No. 19-1, p. 16. He was informed that he would receive an adjustment for refusing housing and would be removed to a different NBCI housing unit. Anderson claims that as Moore "persisted," he was placed in a strip cage, and his property was removed from his cell. He was charged with violating Rule 401 for refusing housing, waived his right to appear before a hearing officer, and was found guilty in absentia. *Id*., p. 20.

Anderson affirms there is no evidence that Moore was denied "pens, writing paper, stamps, envelopes, transcripts, legal motion and material," as noted in his administrative remedy procedure grievance. He notes that Moore was housed in segregation earlier from April 12, 2016, to June 10, 2016. Upon his release from segregation, his personal property inventory sheet reflected that he had 1.5 cubic feet of books and papers (including legal materials), and five pens/pencils. *Id*., p. 14.

On July 26, 2016, when Moore was re-assigned to segregation, the prepared notice of confiscation provided that only two items were being confiscated: a pair of sweatpants and gym shorts. Id., p. 12. On that same day, Moore signed the list of authorized items for segregation inmates. *Id*., p. 11. The list reflected that he had 1.5 cubic feet of books and papers (including legal materials), but made no reference to pens or pencils. *Id*. Upon Moore's release from segregation on August 24, 2016, he signed a list for authorized items for segregation inmates indicating that he had 1.5 cubic feet of books and papers (including legal materials) and two pens/pencils. *Id*., p. 10.

In his declaration, Defendant Anderson affirms that he has no recollection of Moore complaining about his lack of access to legal or writing materials. He further maintains that segregation inmates may only have flex pens and pencils and may submit a commissary request every Sunday. He denies intentionally taking any action to deny Moore access to his legal and writing materials. ECF No. 19-2, Anderson Decl. He argues that the complaint should be dismissed because Moore (1) makes no particularized allegations against him, (2) has failed to establish the elements of an access-to-courts claim, and (3) has not demonstrated a violation of his equal protection rights.

In his opposition, Moore accuses defendant of forging a copy of his property inventory sheet because of print variations on the Xeroxed document. He maintains that he did not see a reference to "1.5" cubic feet written on the document. ECF No. 21. He seemingly alleges that his lack of access to his legal documents caused him injury as during the 26-day period he was precluded from "studying case law for those cases" and working on his law cases as other prisoners were allowed to do. *Id*.

## III. Standard of Review for Summary Judgment

Because defendant has filed and relied on declarations and exhibits attached to his dispositive motion, his motion shall be construed as one for summary judgment, which is governed by Federal Rule of Civil Procedure 56(a). The rule provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

### A. Access-to-Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

A plaintiff must establish that his underlying claim was "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis*, 518 U.S. at 353 n.3. It is not enough that a prisoner is prevented from challenging his conviction. He must also show that his claim had merit.

There appears to be a dispute as to whether Moore had his legal material and writing implements for that 26-day period. The court, however, does not find the disagreement material in nature as Moore, who has been called upon to show actual and real harm from the denial of the materials, has failed to demonstrate injury. While he claims he was unable to work on cases, he has not shown that his alleged inability to access his legal paperwork resulted in his inability

to proceed with his post-conviction petition. Indeed, the state court docket shows that Moore filed post-conviction petitions in the state court in December of 2016 and March of 2017 and he was subsequently represented by an Assistant Public Defender,[2] as is his right.[3] *See State v. Moore*, Case Number 109320036, and *State v. Moore*, Case Number 112132009 (Cir. Ct. for Balto. City). *See* http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis? (last reviewed April 24, 2018). The court finds that Moore has not demonstrated an access-to-courts violation.

## B. First Amendment Right

Moore seemingly claims that his right to free speech was violated when he was denied

---

[2] Md. Code Ann., Art. 27A, § 4 provides that:

> (a) It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article. Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys as hereinafter provided for.
>
> (b) Legal representation shall be provided indigent defendants or parties in the following proceedings:
>
> (1) Any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge;
> (2) Criminal or juvenile proceedings, where the defendant is charged with a serious crime, before the District Court of Maryland, the various circuit courts within the State of Maryland, and the Court of Special Appeals;
> (3) Post-conviction proceedings, when the defendant has a right to counsel pursuant to Title 7 of the Criminal Procedure Article;
> (4) Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result; and
> (5) An involuntary termination of parental rights proceeding or a hearing under § 5-319 of the Family Law Article, if the party is entitled to Public Defender representation under § 5-323 of the Family Law Article.

[3] Md. Code. Ann, § 7-108 provides that, with a certain exception, a person is entitled to assistance of counsel and a hearing on a state post-conviction petition.

writing materials for the 26-day period while on segregation, resulting in his inability to send outgoing mail to loved ones. Although the court does not wish to minimize the alleged emotional trauma suffered by Moore from the purported inability to communicate with family and friends, it finds that given the length of time in which the contact was allegedly impeded, the alleged limitation was not so isolating as to violate the First Amendment. *See*, *e.g.*, *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (noting indefinite suspension of visiting privileges may violate constitutional rights).

**C. Equal Protection**

Moore seemingly claims that he was treated differently from other inmates in similar situations in that other segregation inmates had access to their legal materials. The Equal Protection Clause generally requires that all people similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). This requires Moore to demonstrate that he received different treatment from that received by other individuals similarly situated. *See id.* at 196–97.

Moore has, at best, made a conclusional statement of disparate treatment. This allegation is simply not supported by the evidence before the court. He has failed to establish that defendants intentionally discriminated against him so as to violate the Fourteenth Amendment.

**V. Conclusion**

For the foregoing reasons, defendant Anderson's court-construed motion for summary

judgment IS GRANTED. The complaint against defendants McHogoff, Miller, and Dice shall be dismissed. A separate Order follows.

Dated this 25th of April, 2018 BY THE COURT:

/s/
James K. Bredar
Chief Judge